UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X  Docket#
UNITED STATES OF AMERICA,      : 19-cr-00207-NGG-1
                               :
        - versus -             : U.S. Courthouse
                               : Brooklyn, New York
                               :
MICHAEL BROGAN,                : May 24, 2019
              Defendant        : 2:21 PM
------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE

**A  P  P  E  A  R  A  N  C  E  S:**


**For the Government:**          **Richard P. Donoghue, Esq.**
                                United States Attorney

                        BY:  **Philip Selden, Esq.**
                                Assistant U.S. Attorney
                                271 Cadman Plaza East
                                Brooklyn, New York  11201


**For the Defendant:**           **Michael K. Schneider, Esq.**
                                Federal Defenders of
                                New York, Inc.
                                One Pierrepont Plaza
                                16th Floor
                                Brooklyn, NY 11201




**Transcription Service:**       **Transcriptions Plus II, Inc.**
                                61 Beatrice Avenue
                                West Islip, New York 11729
                                laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

                        Proceedings

1            THE CLERK:  Criminal Cause for a Pleading, case

2   number 19-cr-207, United States v. Michael Brogan.

3            Counsel, please state your appearances.

4            MR. SELDEN:  Good afternoon, your Honor.

5            On behalf of the United States, Assistant

6   United States Attorney Phil Selden.

7            Good afternoon.

8            THE COURT:  Good afternoon.

9            MR. SCHNEIDER:  Federal Defenders by Michael

10  Schneider for Mr. Brogan, who is present.

11           Good afternoon.

12           THE COURT:  Good afternoon.

13           THE DEFENDANT:  Good afternoon, your Honor.

14           THE COURT:  Good afternoon, sir.

15           THE CLERK:  Mr. Brogan, could you please raise

16  your right hand?

17  M I C H A E L   B R O G A N,

18       having been first duly sworn, was examined and

19       testified as follows:

20           THE CLERK:  And can you just state your name

21  for the record?

22           THE DEFENDANT:  Michael Brogan.

23           THE CLERK:  Thank you.  You can put your hand

24  down.

25           THE COURT:  All right.  So what does Mr. Brogan

3

Proceedings

1    intend to do today?

2           MR. SCHNEIDER:  Mr. Brogan has authorized me to

3    offer his guilty plea to the information filed in this

4    case.  He has not been arraigned on it yet.  This is our

5    first appearance on the information.

6           THE COURT:  Oh, okay.  Well, actually let's do

7    the consent, and then we'll do the information and the

8    waiver of indictment.

9           So Do you understand that you have a right to

10   have your guilty plea heard by Judge Garaufis, who is the

11   district judge in this case?

12          THE DEFENDANT:  I was informed of such by my

13   legal counsel --

14          THE COURT:  Okay.

15          THE DEFENDANT:  -- Mr. Schneider.

16          THE COURT:  And I see that you have signed a

17   consent to have a plea taken before a magistrate judge.

18          THE DEFENDANT:  Yes.

19          THE COURT:  I'm the magistrate judge.

20          THE DEFENDANT:  Yes.

21          THE COURT:  So you're consenting --

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  -- to have it before me.

24          THE DEFENDANT:  Yes.

25          THE COURT:  All right.  So as it says here, on

4

Proceedings

1    the consent form, you understand that you'll suffer no

2    prejudice if you don't consent.  Judge Garaufis would be

3    happy to hear your plea.  No one would be upset with you

4    in any way.

5            Do you understand that?

6            THE DEFENDANT:  I understand, your Honor, yes.

7            THE COURT:  Are you making this decision

8    voluntarily?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Do you have any questions about the

11   consent?

12           THE DEFENDANT:  No, your Honor.

13           THE COURT:  Okay.  Great.  So that's approved.

14           The next issue is your right to an indictment.

15   So Mr. Schneider, can you just briefly go over what you

16   explained to Mr. Brogan with respect to his right to --

17           MR. SCHNEIDER:  Sure.  I explained to him that

18   the Constitution of the United States in federal cases

19   requires that a defendant be prosecuted by any felony by

20   indictment but that any defendant can waive that right,

21   and chose instead to be prosecuted by an information.

22           I explained to him basically that an indictment

23   is an accusation presented to a grand jury though

24   evidence and witnesses and the grand jury votes on

25   whether there's enough evidence to charge a person with a

5

Proceedings

1  crime, but that that information is a document drafted by

2  the government containing the charge.

3           THE COURT:  Okay.  And do you understand that?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  And you understand what a grand

6  jury is?

7           THE DEFENDANT:  Yes, essentially a jury of my

8  peers.

9           THE COURT:  Yes, and it would be a number of

10  people who were called to serve on a jury and they would

11  hear the evidence against you, and they would determine

12  whether there's probable cause to believe that you

13  committed a crime -- any crime that's presented for them

14  to consider.

15           And so that is a screen between you and the

16  prosecutor that would allow citizens to opine on whether

17  or not the government's evidence is sufficient to bring

18  criminal charges.

19           THE DEFENDANT:  Yes.

20           THE COURT:  And that's your right.  Criminal

21  charges are serious, and that's why the constitution

22  provides a right for individuals to have the charges

23  against them presented to a grand jury so that it won't

24  simply be the prosecutor who is drafting the charges.

25           Do you understand?

6

Proceedings

 1          THE DEFENDANT:  I do, your Honor, yes.

 2          THE COURT:  So I understand from your lawyer,

 3  and from the waiver of indictment form here, and your

 4  signature on that form, that you are giving up your right

 5  to have the charges against you presented, or at least

 6  the evidence presented to a grand jury to determine

 7  whether there's probable cause to bring criminal charges

 8  against you.

 9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  And that you prefer at this point

11  to proceed by way of information.

12          THE DEFENDANT:  Yes.

13          THE COURT:  Okay.

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Okay.  And do you have any

16  questions about what you're doing?

17          THE DEFENDANT:  No, nothing that hasn't already

18  prior -- been discussed prior.

19          THE COURT:  Okay.

20          THE DEFENDANT:  No, no, your Honor.

21          THE COURT:  Okay.  And you've discussed it with

22  your lawyer.  You fully understand?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And are you making this decision

25  voluntarily?

7

Proceedings

1          THE DEFENDANT:  I am, your Honor.

2          THE COURT:  Has anybody pressured you, forced

3   you --

4          THE DEFENDANT:  No, definitely not.

5          THE COURT:  Okay, great.  All right.  So I find

6   that your waiver is knowing and voluntary, so I'll move

7   now to the information.  The information is a document as

8   your lawyer explained that states criminal charges, and

9   it's written -- drafted by the United States Attorney's

10  Office.

11         Have you had a chance to read the information

12  in this case?

13         THE DEFENDANT:  I -- I have, as a matter of

14  fact.

15         THE COURT:  And do you have a copy with you?

16         MR. SCHNEIDER:  We don't have a copy up here.

17         MR. SELDEN:  I could check and see if I have an

18  extra copy, your Honor.

19         THE COURT:  I'll be happy to give you mine.

20  Actually, do you know what?  I will read it out loud.

21  Since you don't have it, it's probably easier.

22         Threatening to assault and murder a United

23  States official.  On or about December 4th, 2018, within

24  the Eastern District of New York and elsewhere, the

25  defendant Michael Brogan, did knowingly and intentionally

8

Proceedings

1   threaten to assault and murder a United States official

2   with intent to impede, intimidate, and interfere with

3   such official while engaged in the performance of

4   official duties, and with intent to retaliate against

5   such official on account of the performance of official

6   duties.  To wit, Brogan threaten to assault and murder a

7   United States Senator, otherwise known as "The Senator",

8   an individual whose identity is known to the United

9   States Attorney, in retaliation for the Senator's

10  opposition to positions of the President of the United

11  States of America, and the Senator's position concerning

12  reproductive rights.

13          Do you understand the charges.

14          THE DEFENDANT:  I do, your Honor.  Yes.

15          THE COURT:  Okay.  And is -- that is the

16  information to which Mr. Brogan intends to plead guilty?

17          MR. SCHNEIDER:  Correct.

18          THE COURT:  Okay.  So you've been placed under

19  oath.  That means that the questions -- any statements

20  you make here now will be under oath, they're subject to

21  the penalty of perjury.  So that I am going to be asking

22  you a lot of questions and you'll have to answer those

23  questions fully, completely, and truthfully.

24          THE DEFENDANT:  Yes.

25          THE COURT:  And if you don't do that, you could

9

Proceedings

1  be prosecuted for perjury.

2           Do you understand?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  Okay.  Great.  And if you have any

5  questions at all about what the questions mean, feel free

6  to consult with your lawyer privately at any time, or ask

7  me a question.

8           THE DEFENDANT:  I -- I do.  Actually, Mike,

9  could I just --

10          MR. SCHNEIDER:  Yeah, sure.  Just one second,

11  please.

12  (Counsel and client confer)

13          MR. SCHNEIDER:  Thank you, Judge.  We're ready,

14          THE COURT:  All right.  Was your lawyer able to

15  answer your questions?

16          THE DEFENDANT:  Yes.  Yes, your Honor.

17          THE COURT:  Okay.  So we finished up with the

18  grand jury, and with the indictment, and you waived

19  presentation before a grand jury, with the knowledge that

20  a grand jury might or might not indict you.

21          We've now had the information read to you, and

22  you told me you understand it, so I am going to ask you a

23  number of questions to make sure that you fully

24  understand your rights, and the charges against you, what

25  it means to plead guilty because these are constitutional

Proceedings

1   rights that you have.  And I want to be sure that, you

2   know, you -- I'm sure you've discussed it carefully with

3   your lawyer but I just want to be sure that you

4   understand them all.

5            So I am just going to be -- but you will be

6   answering them under the penalty of perjury.

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  Okay.  So tell me again, what is

9   your full name?

10           THE DEFENDANT:  Michael Brogan, B-R-O-G-A-N.

11           THE COURT:  How old are you?

12           THE DEFENDANT:  51.

13           THE COURT:  What is the last level of schooling

14   that you finished?

15           THE DEFENDANT:  I obtained a Bachelor's degree

16   in 1989.

17           THE COURT:  Okay, in any particular area?

18           THE DEFENDANT:  Information systems.

19           THE COURT:  Okay.  Are you now or have you

20   recently been under the care of a doctor or a

21   psychiatrist?

22           THE DEFENDANT:  Never.  I mean, as part of my

23   pre-trial conditions, I do have to go every Monday night

24   to meet with a counselor but I have never been prescribed

25   any pro forma psychiatric regimen.

11

Proceedings

1          THE COURT:  Okay.  So only as a condition of
2   pre-trial services?
3          THE DEFENDANT:  Only as a condition of pre-
4   trial services.
5          THE COURT:  Okay.  And in the past 24 hours,
6   have you taken any narcotic drugs, drunk any alcoholic
7   beverages?
8          THE DEFENDANT:  Absolutely not.
9          THE COURT:  Taken any medicine or pills?
10          THE DEFENDANT:  No, never, in fact.
11          THE COURT:  Have you ever been hospitalized or
12   treated for drug addiction?
13          THE DEFENDANT:  Never.
14          THE COURT:  For alcoholism?
15          THE DEFENDANT:  Never.
16          THE COURT:  For a mental or emotional problem?
17          THE DEFENDANT:  Never, that's (indiscernible).
18          THE COURT:  So these questions just go to your
19   capacity at this time to plead.
20          Is your mind clear now?
21          THE DEFENDANT:  Yes,  your Honor.
22          THE COURT:  Do you understand what's going on
23   here and why you're here today?
24          THE DEFENDANT:  Yes, I do.
25          THE COURT:  Okay.  I have a few questions for

12

Proceedings

1   your lawyer, and then come back to you.

2          Mr. Schneider, have you discussed this matter

3   fully with your client?

4          THE DEFENDANT:  Yes, I have.

5          THE COURT:  Is he -- does he understand the

6   rights he would be waiving by pleading guilty?

7          MR. SCHNEIDER:  I believe he does.

8          THE COURT:  Is he capable of understanding the

9   nature of these proceedings?

10          MR. SCHNEIDER:  Yes.

11          THE COURT:  Do you have any doubts as to his

12   competence to plead at this time?

13          MR. SCHNEIDER:  No.

14          THE COURT:  Have you advised him of the

15   possible maximum and minimum sentence and fine, and other

16   penalties that can be imposed?

17          MR. SCHNEIDER:  Yes.

18          THE COURT:  Have you discussed with him the

19   effect of the sentencing guidelines?

20          MR. SCHNEIDER:  Yes.

21          THE COURT:  Have you advised him that the

22   guidelines are advisory, and that the Court will

23   calculate his guidelines range but will decide using --

24   considering other factors, whether or not to sentence him

25   within the guidelines, above or below?

Proceedings

1           THE DEFENDANT:  Yes.

2           THE COURT:  Have you advised him that if he

3   were not a citizen of the United States, a guilty plea

4   could result in a deportation?

5           MR. SCHNEIDER:  I haven't discussed that with

6   him.  My client was born in Brooklyn.

7           THE COURT:  Yes.

8           MR. SCHNEIDER:  So I didn't have that

9   discussion.

10           THE COURT:  I am required to ask that question

11   even if you were born in Brooklyn.

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  Do you understand that?

14           THE DEFENDANT:  I do, your Honor, yes.

15           THE COURT:  Okay.  Great.

16           THE COURT:  Do you understand there's no

17   guarantee what your guidelines range will be or what your

18   sentence will be?

19           THE DEFENDANT:  Oh, quite -- quite the

20   contrary.  I thought that -- wasn't there a guidelines

21   established that --

22           MR. SCHNEIDER:  There is a guidelines range in

23   the plea agreement which is the government's estimate,

24   which matches my estimates, and the parties think that

25   that will be the likely guidelines range but in the end,

Proceedings

1   the judge, Judge Garaufis, will decide the guidelines

2   range, and there's no guarantee of what guidelines range

3   he will decide but that is our best estimate of the

4   guidelines range.

5           THE DEFENDANT:  Okay.

6           MR. SCHNEIDER:  Okay?

7           THE DEFENDANT:  Yes, your Honor -- yes.

8           THE COURT:  Do you understand?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Okay.  So what's going to happen,

11  and I will go over it again later but Judge Garaufis will

12  calculate your guidelines range, and he is going to refer

13  to what the government said, he's going to refer to what

14  you and lawyer say.  You have a right to weigh in on that

15  but ultimately, the decision is his.

16          And then Judge Garaufis will review a number of

17  factors, and he'll decide to whether to sentence you

18  within the guidelines, above it, or below the guidelines.

19  So the Court has some discretion in deciding how to

20  sentence you.

21          And the important thing is that at this point,

22  no one knows for sure what your guidelines range will be

23  or what your sentence will be.  Judge Garaufis doesn't

24  know, the prosecutor doesn't know, and you and your

25  lawyer don't know.  No one knows.  There is more

Proceedings

1    information that has to be provided to the Court to make

2    that decision.

3            Does that make sense?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  Okay.  So there is no guarantee

6    what your sentence will be or what the guidelines range

7    will be at this time.

8            THE DEFENDANT:  Yes.

9            THE COURT:  Okay.  Any questions so far?

10           THE DEFENDANT:  No, sir.

11           THE COURT:  Okay.  Have you discussed your case

12   fully with your lawyer?

13           THE DEFENDANT:  I have, yes.

14           THE COURT:  Are you satisfied to have him

15   represent you?

16           THE DEFENDANT:  I am, yes.

17           THE COURT:  Now as your lawyer, I am sure, has

18   explained to you, you have a number of constitutional and

19   statutory rights that you will give up if you plead

20   guilty.  And so I want to be sure you understand them and

21   are knowingly and voluntarily giving up those rights.

22           That's when anyone pleads guilty, this is what

23   we go through to make sure that they fully know what

24   they're doing, okay?  So you have a right to plead not

25   guilty.

16

Proceedings

1           Do you understand that?

2           THE DEFENDANT:  I do, your Honor.

3           THE COURT:  And if you continue to plead not

4    guilty, it would be your right under the Constitution and

5    laws of this country to a speedy trial, held in public,

6    before a jury, with the assistance of your lawyer on the

7    charges in the information that we went through, okay?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  And of course if at any point in

10   these proceedings you cannot afford an attorney, the

11   Court will make sure that an attorney is appointed to

12   represent you at all stages of the case, all the way

13   through trial, and if you were convicted, all the way

14   through your appeal; again, at no cost to you.

15          Do you understand?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  So again it's your right, if you

18   wish, to have a trial, and if you do go to trial, you

19   would be presumed innocent.  The government would have

20   the burden of proving that you're guilty by what's called

21   competent evidence that's admissible at trial.  We have

22   special rules of evidence that deal with that.

23          And you would have to -- the government would

24   have to prove any charges it wishes to bring against you

25   beyond a reasonable doubt.  We would have to convince

Proceedings

1  jurors beyond a reasonable doubt of any charge they want

2  to find you guilty of.

3         You would not have to prove you're innocent.

4  You would not even have to present any evidence at all.

5  The burden is entirely on the government.

6         Do you understand that?

7         THE DEFENDANT:  Yes, sir.

8         THE COURT:  And even if you did everything that

9  the government has accused you of, if the government

10 cannot convince a jury beyond a reasonable doubt that

11 you're guilty, the jurors would have a duty to find you

12 not guilty.

13        Do you understand that?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  Any questions so far?

16        THE DEFENDANT:  No, sir.

17        THE COURT:  So if you decided to go to trial,

18 the government would to bring its witnesses to court.

19 They would have to testify.  You and your lawyer would be

20 able to listen to the testimony.  You would be present

21 for it.  Your lawyer would have the right to cross-

22 examine them, to object to the government's evidence and

23 to present evidence in your defense, and to call

24 witnesses that you want to have testify at trial to

25 appear in court.

Proceedings

1          Do you understand?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Any questions about that?

4          THE DEFENDANT:  No.

5          THE COURT:  Okay.  So these are just basic

6    rights if you chose to have a trial.

7          If you decided to go to trial, you would have a

8    choice of whether or not to testify.  It's your right to

9    testify if you wished to do so but no one could force you

10   to testify because you have a Fifth Amendment privilege

11   that guarantees you the right to remain silent and not to

12   incriminate yourself.

13         Do you understand that?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  And as part of that right, if you

16   decide not to testify, Judge Garaufis will instruct the

17   jurors that they couldn't hold that against you.  In

18   other words, you can't be penalized for asserting the

19   Fifth Amendment.

20         Do you understand that?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  Okay.  So the jury would be

23   instructed that they couldn't hold it against you and

24   assume that you're guilty because you didn't testify in

25   your own defense.

19

Proceedings

1          If you plead guilty, and if Judge Garaufis

2    accepts your plea, you'll be giving up your

3    constitutional rights to a trial and the other rights t

4    that I've just explained.  There won't be any trial at

5    all.  The Court will just enter a judgment that you're

6    guilty of the charge that you're pleading to, and you

7    won't be able to appeal from the judgment of guilty.

8          Do you understand that?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  And if you do plead guilty, I am

11   going to have to ask you some questions because I have to

12   be convinced that you really are guilty, and then you'll

13   have to answer my questions, and admit your guilt.  And

14   when you do that, you're giving up your right to remain

15   silent and not to incriminate yourself.

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  Do you understand?  Okay.

18         Any questions at all?

19         THE DEFENDANT:  No.  Well, your Honor, so this

20   is the point where you ask me the questions about what

21   transpired?

22         THE COURT:  Yeah --

23         MR. SCHNEIDER:  At the end, he'll ask you.

24         THE COURT:  Soon.  I just want to make sure --

25         THE DEFENDANT:  Okay.

20

Proceedings

1      THE COURT:  --  before I get to that point
2  because that's part of your right to remain silent.  So I
3  don't want to have you to tell me anything until I am
4  sure that you understand all of your rights before you do
5  that.
6      THE DEFENDANT:  I do.  Can I -- Michael, can I
7  confer with you just for a moment?
8      MR. SCHNEIDER:  Sure.  Can I have one moment?
9      THE COURT:  Sure.
10  (Counsel and client confer)
11      MR. SCHNEIDER:  Thank you, Judge.
12      THE COURT:  Sure.  Now was your lawyer able to
13  answer your questions?
14      THE DEFENDANT:  Yes, sir.
15      THE COURT:  So are you ready to proceed?
16      THE DEFENDANT:  I am, yes.
17      THE COURT:  Okay.  So you understand then that
18  I am going to be asking you those questions soon about
19  what you did in order to be sure that you really are
20  guilty, so that I can recommend to Judge Garaufis whether
21  or not to accept a guilty plea and you're going to have
22  to answer my questions and admit your guilt, if in fact
23  you wish to plead guilty, and in fact you are guilty.
24      Do you understand?
25      THE DEFENDANT:  Yes, sir.

21

Proceedings

1          THE COURT:  And when you do that, you're giving

2    up your right to remain silent and not to incriminate

3    yourself.

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  That's all part of asking you those

6    questions.

7          Okay.  Now you asked a little while ago about

8    sentencing, and I just -- and I told you there were other

9    factors in addition to the sentencing guidelines that

10   Judge Garaufis has to consider.

11         So 18 USC 3553 actually discusses the factors

12   that the Court considers in imposing a sentence, and I am

13   going to go through some of the important ones; the

14   nature and the circumstances of the offense, the history

15   and the characteristics of you, the defendant, the need

16   for the sentence imposed.  And in the statute it says to

17   reflect the seriousness of the offense, to promote

18   respect for the law, to provide what would be fair or

19   just punishment, what kind of a sentence is necessary,

20   what sentence is necessary to protect the public from

21   further crimes of the defendant, and what's necessary to

22   provide the defendant with neither either education or

23   vocational training, medical care, other correctional

24   treatment, in the most effective manner, et cetera.

25         So there are a number of factors that the Court

22

Proceedings

1    considers and the guidelines are just one of them, and

2    the guidelines as I said are advisory.

3            Do you understand?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  Okay.  Let's go to the plea

6    agreement.  Do you have a copy of the agreement there?

7            MR. SCHNEIDER:  We do.

8            THE COURT:  Great.  And Mr. Schneider, is this

9    the only agreement currently between Mr. Brogan and the

10   government?

11           MR. SCHNEIDER:  We signed one proffer agreement

12   in the past, but this is the only agreement really that

13   took place.

14           THE COURT:  Okay.  Mr. Selden?

15           MR. SELDEN:  That is correct.

16           THE COURT:  All right.  And Mr. Brogan, did you

17   read this agreement?

18           THE DEFENDANT:  I have, yes.

19           THE COURT:  Have you had a chance to discuss it

20   with your lawyer?

21           THE DEFENDANT:  Yes, I have.

22           THE COURT:  And was he able to answer all of

23   your questions?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  And on the last page, there's a

23

Proceedings

1  signature above your name.  Is that your signature?

2          MR. SCHNEIDER:  We have an unsigned copy.

3          THE COURT:  Did you sign a copy?

4          THE DEFENDANT:  I did, sir, yes.

5          THE COURT:  Yeah, I think this is the copy.

6  Does that look like it?  I'll hand it over if you want to

7  see it.

8          THE DEFENDANT:  Yes, sir.  Yes, ma'am (sic),

9  that's my signature.

10         THE COURT:  Okay, great.  So do you feel

11 comfortable that you understand the agreement?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Okay.  So I am just going to go

14 through parts of it.  If there's anything else that you

15 would like to put on the record, I would be happy to do

16 it.

17         So in paragraph 1 says that you'll waive

18 indictment and plead guilty to an information, which you

19 have already done -- at least you've waived indictment.

20 We're now talking about the guilty plea.

21         If you do that, you're facing a penalty of a

22 minimum of zero years in prison, and a maximum of 10

23 years in prison.

24         Do you understand that?

25         THE DEFENDANT:  Yes, sir.

24

Proceedings

```
 1            THE COURT:  There's a maximum period of
 2   supervised release of three years, to follow any term of
 3   imprisonment, and there's a separate penalty for a
 4   violation of a condition of release which is that you
 5   could be sentenced to up to two years in prison without
 6   credit for the time you had been in prison before your
 7   release, or the time you served on post-release
 8   supervision.
 9            Do you understand how that works and what that
10   means?
11            THE DEFENDANT:  Yes, sir.
12            THE COURT:  Okay.  So you would be supervised
13   by a probation officer.  There would be a number of
14   conditions.  You would have to follow those conditions,
15   and what we were talking about just a minute ago is that
16   there's a separate penalty for a violation of those
17   conditions.
18            THE DEFENDANT:  Yes, sir.
19            THE COURT:  Okay.  On page 2, subparagraph D,
20   the maximum fine is the greater of $250,000 or twice the
21   gross gain and twice the gross loss.  I'm not sure quite
22   how that's calculated.  I think we're talking 250.
23            MR. SCHNEIDER:  I don't think there's any gain
24   or loss here, but I am not -- I am not aware of any, so I
25   would think $250,000 would be the maximum.
```

25

Proceedings

1          THE COURT:  I think so.

2          MR. SELDEN:  I believe that's correct, your

3   Honor.

4          THE COURT:  Okay, thanks.  Restitution --

5          THE DEFENDANT:  Your Honor, if I could ask

6   though, now is that a range from zero to --

7          MR. SCHNEIDER:  Yes.

8          THE COURT:  Zero to 250.

9          THE DEFENDANT:  Okay.

10         THE COURT:  It's just the maximum.  The maximum

11  that could be imposed is 250.

12         THE DEFENDANT:  Twice the gross gain or twice

13  the gross loss.  What is that -- what does that mean?

14         MR. SCHNEIDER:  That relates to economic

15  crimes.

16         THE DEFENDANT:  Oh, okay.  I (indiscernible).

17         MR. SCHNEIDER:  Or if there was some loss

18  attributable to your conduct, then it could --

19         THE DEFENDANT:  Okay.

20         MR. SCHNEIDER:  -- be twice that amount.

21         THE DEFENDANT:  Okay.

22         MR. SCHNEIDER:  It could be -- but we're

23  unaware at this point of any loss attributable to your

24  conduct, okay?  So I believe the maximum is $250,000.

25         THE DEFENDANT:  A salient question actually,

26

Proceedings

1  going back to December 12th, 2018, when the visitation --

2            MR. SCHNEIDER:  Um-hum.

3            THE DEFENDANT:  -- the visitation

4  (indiscernible).

5            MR. SCHNEIDER:  When you were arrested?

6            THE DEFENDANT:  Expenses to cover -- I mean

7  just, you know --

8            MR. SCHNEIDER:  No, it's not investigative

9  expenses.

10            THE DEFENDANT:  Okay.  I just wanted to be

11  sure.

12            MR. SCHNEIDER:  It's loss to the victim.

13            THE DEFENDANT:  Okay, okay.

14            THE COURT:  And it's unlikely even if there

15  were investigative expenses that they would exceed

16  $250,000.

17            THE DEFENDANT:  Right.

18            THE COURT:  But I think both the prosecutor and

19  your lawyer are saying that they can't conceive at this

20  time of any economic gain or loss.

21            THE DEFENDANT:  Oh, okay.  Okay.

22            MR. SELDEN:  That is correct, your Honor.

23            THE COURT:  And I have to confess, I can't

24  either but it doesn't mean there aren't -- there isn't

25  one but it's unlikely, pretty unlikely.

27

Proceedings

1          Is restitution an issue here?

2          MR. SELDEN:  Your Honor, pursuant to the

3 statute, the restitution is mandatory in the amount of

4 each victim's losses as determined by the Court but at

5 this time, we don't have a belief that restitution will

6 be applicable in this case.

7          THE COURT:  Okay.

8          MR. SELDEN:  Thank you, your Honor.

9          THE COURT:  Do you understand that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Okay.  Again, it has to do with the

12 losses, the same thing we just talked about before.

13          There is a fee though of $100, a special

14 assessment that you do have to pay.

15          THE DEFENDANT:  I'm aware of that.  Yes.

16          THE COURT:  Okay.  So paragraph 2 talks about

17 sentencing, and we talked about the guidelines but let's

18 just do it one more time.  The guidelines are just guides

19 that help Judge Garaufis decide how to sentence you.  As

20 I said, they're not binding.  They're advisory.  He's

21 going to calculate the guidelines range after reading the

22 pre-sentence investigation report, and holding a hearing.

23          You and your lawyer will have the opportunity

24 to weigh in on that, to present all the evidence you

25 believe he needs to hear, as will Mr. Selden and the

28

Proceedings

1  government.

2          And the Judge Garaufis will calculate the

3  guidelines range.  As I said, no one at this time knows

4  for sure what the guidelines range will be.  As your

5  lawyer said, what's in paragraph 2 is just the

6  government's estimate of what the guidelines range will

7  be.  And you and your lawyer apparently agree that that's

8  the correct estimate.  So --

9          THE DEFENDANT:  Which means that that -- your

10  Honor, that estimate -- that it could actually fall above

11  or below the parameters --

12          THE COURT:  Right.

13          THE DEFENDANT:  -- specified herein --

14          THE COURT:  That's right.

15          THE DEFENDANT:  -- of this agreement.  Okay.

16          THE COURT:  So I am just going to ask the

17  government briefly to explain its calculus.

18          MR. SELDEN:  Thank you, your Honor.

19          Your Honor, with regards to the government's

20  preliminary guidelines calculation, the government

21  believes that the base offense level is a level two --

22  I'm sorry, 12, pursuant to 2(a)(6.1)(A)(1).

23          Specifically, the government believes that

24  there are no potential enhancements as it as it relates

25  to the base offense level, for a total offense level of

29

Proceedings

1   12.

2          If the defendant clearly accepts and

3   demonstrates a responsibility through allocution and

4   subsequent conduct prior to the imposition of sentence, a

5   two-level reduction will be warranted pursuant to

6   sentencing guidelines provision 3(e)(1.1)(A), resulting

7   in an adjusted offense level of a 10, and a range of

8   imprisonment of 6 to 12 months, assuming that the

9   defendant falls within criminal history category one.

10         Thank you, your Honor.

11         THE COURT:  Anything to add, Mr. Schneider?

12         MR. SCHNEIDER:  No, just that I believe that is

13   the accurate guidelines calculation.  That sentencing

14   level falls within Zone B of the guidelines.  I've

15   discussed that with my client.  Zone B allows the Court

16   to impose a sentence of probation, substituting home

17   confinement or community confinement for the

18   incarceratory term of 6 to 12 months.

19         And obviously, I've also discussed with him

20   that the judge has certain discretion to give a sentence

21   outside the guidelines range, either above or below the

22   range.

23         THE COURT:  Do you understand what your lawyer

24   said?

25         THE DEFENDANT:  Yes, sir.

30

Proceedings

1          THE COURT:  So it may be that there are some
2     possibilities that you and your lawyer will be seeking
3     but there's no guarantee either way whether they will be
4     accepted or not.  Okay?  Any questions at all?
5          THE DEFENDANT:  No.  No, sir.
6          THE COURT:  Okay.  In paragraph 4, you -- well,
7     actually you have stipulated to this guidelines
8     calculation which your lawyer believes is correct.
9          In paragraph 4, you've agreed not to appeal or
10    otherwise challenge your sentence or conviction, if you
11    receive a sentence of 12 months or less.
12         Do you understand that?
13         THE DEFENDANT:  Yes, sir.
14         THE COURT:  Okay.  Is there anything else in
15    this agreement that either party thinks should be placed
16    on the record?
17         MR. SELDEN:  No, not for the government.  Thank
18    you, your Honor.
19         THE COURT:  Okay.
20         Do you have any questions about the agreement
21    that you would like to either ask me, or ask your lawyer
22    about, or anything about this case before we go any
23    further?
24         THE DEFENDANT:  Yes.
25         MR. SCHNEIDER:  Do you want to ask me?

Proceedings

1          THE DEFENDANT:  Yes.

2          MR. SCHNEIDER:  Okay.

3  (Counsel and client confer)

4          MR. SCHNEIDER:  Thank you, Judge.

5          THE COURT:  Okay.  Were all your questions

6  answered?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Okay.  This is probably not

9  applicable to you but if you're sentenced to prison,

10  there's no early release on parole.  We don't have parole

11  in federal court.

12          THE DEFENDANT:  Yeah, I was made aware of that

13  as a matter of fact.

14          THE COURT:  Okay.

15          THE DEFENDANT:  Yes.

16          THE COURT:  Good.  So once again, Do you have

17  any questions you would like to ask me or your lawyer

18  before you proceed?

19          THE DEFENDANT:  No, I guess nothing.  Perhaps

20  as we delve into it, I might come up with some questions.

21  I don't have any at the moment.

22          THE COURT:  I think we're pretty much through

23  all the important rights and other issues.

24          So are you ready to plead?

25          THE DEFENDANT:  Yes, sir.

Proceedings

1          THE COURT:  Mr. Schneider, is there any reason
2    why Mr. Brogan should not plead guilty to the
3    information?
4          MR. SCHNEIDER:  No.
5          THE COURT:  As to the information, how do you
6    plead, Mr. Brogan?
7          THE DEFENDANT:  I plead guilty, your Honor.
8          THE COURT:  Are you pleading guilty
9    voluntarily?
10          THE DEFENDANT:  Yes, yes, your Honor.
11          THE COURT:  Did anybody force you or threaten
12    you to make you agree to plead guilty?
13          THE DEFENDANT:  No, no.
14          THE COURT:  Anybody made you any promises
15    outside of the plea agreement?
16          THE DEFENDANT:  None whatsoever.
17          THE COURT:  Anybody promised you what your
18    sentence will be?
19          THE DEFENDANT:  No, no.  I have no assurance as
20    to what it is going to be, to be quite honest with you.
21          THE COURT:  Or even what the guidelines range
22    will be?
23          THE DEFENDANT:  Well, I mean I am going based
24    on the guidelines here in this plea agreement.  That's
25    all I have to go on.

33

Proceedings

1            THE COURT:  Right.  But again, that is just the

2    government's estimate and your lawyer's estimate.  Judge

3    Garaufis will make the final decision.

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  So you understand that?

6            THE DEFENDANT:  I do, yes.

7            THE COURT:  Okay.  Great.

8            So can you tell me what it is that you did that

9    makes you guilty of the charge?

10           THE DEFENDANT:  Okay.  On December 4th, 2018, I

11   came home from work, and I was in my room.  I had my

12   laptop on.  And I just -- I was about to turn the laptop

13   off, to be quite honest with you, and I got an email.  I

14   believe it came from LifeSite News, I believe.  I don't

15   recall for certain.  I do recall it was December 4th.

16           And quite honestly, I -- the only reason I

17   recall the incident is because of the subsequent fallout

18   from it.  Otherwise, if this would have never happened, I

19   would -- I almost certainly wouldn't recollect what

20   happened that night.

21           MR. SCHNEIDER:  You don't have to tell the

22   whole story.  I appreciate that you want to but all the

23   judge has to hear is the elements of the crime.

24           THE DEFENDANT:  Right.

25           MR. SCHNEIDER:  Okay?

34

Proceedings

1          THE DEFENDANT:  Well, ultimately, there was a

2    link to a clip for that particular senator --

3          THE COURT:  Um-hum.

4          THE DEFENDANT: -- who appeared on a -- it was

5    ABC This Week program, and -- well, I was angered by

6    some, I guess you would -- what you would refer to as

7    conciliatory comments that -- against -- well, against --

8    well, quite honestly, as it states in here, against the

9    executive branch of government.  But in addition, it was

10   really conciliatory comments against the pro life

11   movement.

12         MR. SCHNEIDER:  When you say "conciliatory"

13   what do you mean?

14         THE DEFENDANT:  Well --

15         MR. SCHNEIDER:  I don't know if you're using

16   that word correctly.

17         THE DEFENDANT:  Well, I guess -- counter --

18   let's just refer to it as counter --

19         MR. SCHNEIDER:  Counter, okay.

20         THE DEFENDANT:  -- to -- strongly, strongly

21   counter, to -- to those two particular entities.

22         MR. SCHNEIDER:  Um-hum.  Um-hum.

23         THE DEFENDANT:  And so I was angry, and I --

24   and in my anger, and that -- which was very, very

25   uncharacteristic, I made a phone call to this senator's,

35

Proceedings

1    I -- I -- you know, I believe it was the legislative

2    office in Washington, D.C.  Should I --

3             MR. SCHNEIDER:  It's okay.

4             THE DEFENDANT:  -- do I --

5             MR. SCHNEIDER:  Just tell him what happened.

6             THE DEFENDANT:  Do I divulge the name of the

7    senator?

8             MR. SCHNEIDER:  No, no.

9             THE DEFENDANT:  Keep that confidential.  Okay.

10            MR. SCHNEIDER:  No.

11            THE DEFENDANT:  So I made a call.  I left a

12   voicemail, I recall.  I really honestly don't recall

13   everything that happened but I left a voicemail, and a

14   lot of which is conveyed -- although I don't remember

15   word-for-word -- okay.  And it was profane, and it was --

16   it was in anger.  But most importantly it --

17            MR. SCHNEIDER:  Before you say the "but",

18   during that phone call, did you make threats against the

19   senator?

20            THE DEFENDANT:  I -- I -- I did make threats.

21            MR. SCHNEIDER:  Okay.

22            THE DEFENDANT:  Not necessarily intended to be

23   perceived as -- as -- as a -- as a death threat or

24   something with an ultimate demise.  I mean that's, you

25   know --

Proceedings

1    THE COURT:  What kind of threats did you make?

2         THE DEFENDANT:  I did say, according to this,

3  that I -- and I'm actually going by this based on what --

4  I remember making the call.  I mean based on what I am

5  seeing here, a threat to -- a threat to shoot or to put a

6  bullet into this particular government official.

7         THE COURT:  Um-hum.

8         MR. SCHNEIDER:  That's probably enough.

9         THE DEFENDANT:  And --

10        MR. SCHNEIDER:  It's okay.

11        THE COURT:  Because of the government

12 official's performance of his or her official duties?

13        THE DEFENDANT:  What it was, it wasn't just the

14 stance, it was what I perceived as -- as -- it was just a

15 -- what I perceived as a -- it was just a lot of hubris

16 on the part of the person, and it was just the way they

17 came across about it.  It was just -- it was -- it was a

18 combination of the stance, plus the way it was

19 presented --

20        THE COURT:  Um-hum.

21        THE DEFENDANT:  -- that I guess those two

22 factors together, I -- I became very, very angry about

23 it, and I shouldn't have done what I did because if not

24 -- if for no other reason, in addition to many other

25 reasons, it gives a proverbial black eye to a cause, the

37

Proceedings

1    pro life cause and I shouldn't have done that.  And I

2    don't have a history of doing that.  But I did it in that

3    moment.  I don't know, it was perhaps because maybe I had

4    a bad day at work.  I don't -- I don't recall if I did or

5    I didn't.  It was something I deeply regret.

6              And of course the subsequently, if I -- should

7    I jump ahead eight days momentarily or do you want to --

8              MR. SCHNEIDER:  I don't think we need to talk

9    about the arrest.

10             THE COURT:  I don't think we need that

11   apparently.

12             THE DEFENDANT:  There was never any

13   intention --

14             THE COURT:  But I think your lawyer would be

15   happier -- your lawyer would probably -- you would make

16   your lawyer happy by saying less rather than more, that's

17   what lawyers --

18             MR. SCHNEIDER:  Everything about the arrest

19   will be known to Judge Garaufis.

20             THE DEFENDANT:  Okay.

21             MR. SCHNEIDER:  We don't have to put that on

22   the record here.

23             THE DEFENDANT:  Well, the call was made in

24   anger, and it was a call made in anger which I would

25   venture say fairly conclusively, based on the fact that I

38

Proceedings

1   had forgotten about the call afterwards.

2           THE COURT:  Um-hum.  So you're trying to say

3   you didn't mean it.

4           THE DEFENDANT:  Of course, yeah.  Yep.  A

5   hundred -- I can unequivocally say that and I think

6   without venturing ahead, I think that they're -- the

7   investigation done by the United States Capitol Police

8   and any affiliated authorities would convey that.

9           THE COURT:  Um-hum.

10           THE DEFENDANT:  And I think it has, based on

11   the fact that I am here today, and not inside a prison

12   cell.  So I --

13           THE COURT:  Right.

14           THE DEFENDANT:  -- would like to think that --

15           MR. SCHNEIDER:  Right, that is --

16           THE DEFENDANT:  -- is (indiscernible) --

17           MR. SCHNEIDER:  I think that what Mr. Brogan is

18   trying to say, is he had no intent to carry out the

19   threat.  I've informed him, that's not an element of the

20   crime.  You don't have to have intent to carry out the

21   threat to meet the elements of the statute.

22           THE COURT:  Right, and --

23           THE DEFENDANT:  Yeah, he -- Michael, my lawyer,

24   did inform me of that.  Although I would just reinforce

25   that there was never any intention to carry out any crime

Proceedings

39

1  beyond that phone call.

2          THE COURT:  But the charge does require that

3  you intend to impede, intimidate, and interfere with --

4          MR. SCHNEIDER:  Or retaliate against.  So I

5  believe that --

6          THE COURT:  Intend to retaliate against, right.

7          MR. SCHNEIDER:  -- the senator made statements

8  in her capacity as a senator regarding reproductive

9  rights, and the president, and that was the genesis of

10 the call.  I think that meets that element.

11         MR. SELDEN:  I think that if Mr. Brogan is in

12 agreement with that, we would agree that that would

13 satisfy those elements.  So we would just inquire to the

14 Court if Mr. Brogan is in fact in agreement with Mr.

15 Schneider's position, that in fact at the time he was

16 intending to retaliate against the senator for the

17 senator's position and criticism and the president, and

18 with regards to reproductive rights.

19         We would just inquire, is that correct?

20         THE DEFENDANT:  Yes, I would concur with that.

21 Yes.

22         MR. SELDEN:  And the one other thing that the

23 government would proffer had the case proceeded to trial

24 or with regards to the elements of proof that we would

25 establish is that at the time as Mr. Brogan has clearly

Proceedings

1   made aware to the Court, I want to just specifically

2   articulate, he was in his home in Brooklyn, New York,

3   within the Eastern District of New York.

4          THE COURT:  Okay.

5          MR. SELDEN:  And that the call itself did occur

6   to the Washington field office of the senator that Mr.

7   Brogan has made reference to.  Thank you, your Honor.

8          THE COURT:  Now in my copy of the information,

9   there is an "and" between the intent to impede,

10  intimidate, interfere with such officials.

11         MR. SCHNEIDER:  Yeah, the government writes

12  their --

13         THE COURT:  And with intent.

14         MR. SCHNEIDER:  -- they write their indictments

15  and informations in that way to include "and".  The

16  statute is written "or" and so if you have any of those

17  motivating factors, you have met the elements of the

18  statute.

19         THE COURT:  Right.  So I am going to just --

20         THE DEFENDANT:  So your Honor --

21         THE COURT:  -- consult my handy copy.  So I

22  think you're saying to me that as a member of pro life --

23  as a believer in pro life, the idea of ending a life

24  would not be consistent with your philosophy.

25         THE DEFENDANT:  Oh, I could say that with a

41

Proceedings

1   hundred percent certainty.

2           THE COURT:  Okay.

3           THE DEFENDANT:  We --

4           THE COURT:  Yes, I think you conveyed that.

5           THE DEFENDANT:  -- in controlling --

6           MR. SCHNEIDER:  It's okay.

7           THE DEFENDANT:  Okay.

8           MR. SCHNEIDER:  He just wanted to make sure

9   that that was all true.

10          THE DEFENDANT:  Yes, yes.  No, that includes

11  people that are alive, as well.  When I say "alive" your

12  Honor, I mean outside the womb because everyone is alive

13  from conception.  I just want to --

14          THE COURT:  Oh, that's a debate that's much

15  bigger than all of us here today.

16          THE DEFENDANT:  I just want to specify that

17  that that means --

18          THE COURT:  Okay.  Is it 115(a) that I should

19  be looking at?

20          MR. SCHNEIDER:  Yeah, (a)(1) --

21          MR. SELDEN:  That's correct.

22          THE COURT:  (a)(1)?

23          MR. SCHNEIDER:  (a)(1)(B).

24          THE COURT:  (a)(1)(B):  "Threatens to assault,

25  kidnap or murder  U.S. official", et cetera, et cetera,

42

Proceedings

1   et cetera, an official (indiscernible) would be a crime

2   of -- "with intent to impede, intimidate, or interfere

3   with such individual while engaged in the performance" --

4   "or with intent to retaliate".

5        MR. SCHNEIDER:  Yes.

6        THE COURT:  Mr. Schneider, you win the debate.

7        MR. SCHNEIDER:  It's not my first rodeo, Judge.

8        THE COURT:  So that was an important element

9   because I want to be sure that your guilty plea is to the

10  statute and that what you have said is that what you did

11  is consistent with what you're pleading guilty to.  And

12  so you did not -- you are telling me that you did not

13  intend to harm anyone but you did intend to retaliate

14  against that person for the position that the person took

15  in her official position.

16       THE DEFENDANT:  Yes, yes, your Honor.  With the

17  strict -- I guess you could call it verbal retaliation

18  limited to such --

19       MR. SCHNEIDER:  Yes.

20       THE DEFENDANT:  -- verbal retaliation.

21       THE COURT:  Yes.

22       THE DEFENDANT:  And nothing further.

23       THE COURT:  Got it.  I think that's

24  satisfactory.  Does the government have any additional

25  questions?

43

Proceedings

1          MR. SELDEN:  No, thank you, your Honor.

2          THE DEFENDANT:  Without any intention to make a

3    second call.

4          MR. SCHNEIDER:  Yeah.

5          THE DEFENDANT:  Okay.  Yes.

6          THE COURT:  Okay.  So Mr. Brogan, I find that

7    you understand your rights --

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  -- the charges against you, the

10   rights you're giving up by pleading guilty, the

11   consequences of a guilty plea, including the possible

12   sentence, fine, and other penalties.  You understand

13   there's no guarantee what your sentence will be, or what

14   your guidelines range will be, and I do find that there

15   is a factual basis for the plea.  That you did intend not

16   to harm anyone but to retaliate against an official -- a

17   United States official on account of the performance of

18   official duties.

19          So I therefore recommend that Judge Garaufis

20   accept your plea of guilty to the information.

21          THE DEFENDANT:  Yes, your Honor.

22          MR. SELDEN:  Thank you, your Honor.

23          MR. SCHNEIDER:  Thank you, your Honor.

24          THE CLERK:  Sentencing is set for September

25   10th at 10:30 a.m. before Judge Garaufis.

44

Proceedings

1          MR. SCHNEIDER:  Thank you.

2          THE COURT:  Okay, thanks.

3          THE DEFENDANT:  Thank you.

4          MR. SCHNEIDER:  Oh, one more issue, your Honor.

5    Mr. Brogan, who was arrested in December, has been on

6    electronically monitored home confinement.

7          THE COURT:  Okay.

8          MR. SCHNEIDER:  He is only allowed to go to

9    work.  I've spoken to the government and pretrial.  They

10   both consent to modify the conditions to a curfew, still

11   electronically monitored, but just a curfew to be set by

12   pretrial.

13         THE COURT:  Okay.  So it's not home

14   confinement.

15         MR. SCHNEIDER:  Right.  He'll still be

16   electronically monitored but it won't be -- they won't be

17   monitoring him all during the day when he is at work, and

18   things like that.

19         THE COURT:  Okay.

20         MR. SELDEN:  And, your Honor, just to -- so the

21   record is clear, we don't have an opposition to that, and

22   I understand from pretrial that they also have already

23   entered an agreement with regards to that as of

24   yesterday.  The one request we would have is just that

25   Mr. Brogan continue to stay away from Washington, D.C.

45

Proceedings

1   We have no reason to believe that he would go there but
2   we would just ask for that stay away over the next
3   approximately several months be in place.
4            THE DEFENDANT:  Fine.  I have no -- no issue
5   with that.
6            THE COURT:  Okay.  All right.  And if pretrial
7   services finds that Mr. Brogan's adjustment has been
8   good, and there's no objection to it, I will go along
9   with that.
10            THE DEFENDANT:  Thank you, your Honor.
11            THE COURT:  So ordered.
12   (Counsel and client confer)
13            THE COURT:  Anything else?
14            MR. SCHNEIDER:  Nothing further.
15            MR. SELDEN:  Not for the government.  Thank
16   you, your Honor.  May we be excused?
17            THE COURT:  Yes.
18            MR. SELDEN:  Have a nice weekend everybody.
19            THE COURT:  Thank you.
20                 (Matter concluded)
21                      -o0o-
22
23
24
25

46

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **29th** day of **June**, 2019.

*Linda Ferrara*

Linda Ferrara

AAERT CET 656

Transcriptions Plus II, Inc.